# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiffs,<br><br>    vs.<br><br>LIBAN HASSAN,<br><br>                Defendant. | 8:14CR398<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendant Liban Hassan's Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29 or, alternatively, Motion for New Trial under Federal Rule of Criminal Procedure 33 (Filing No. 91). For the reasons stated below, the Motion will be denied.

## BACKGROUND

On August 13, 2015, Hassan was convicted of one count of interference with commerce by means of robbery in violation of 18 U.S.C. § 1951 for his involvement in the robbery of a Kum & Go convenience store in Omaha, Nebraska, on May 18, 2015. At trial, the Government called M.S., a clerk working at the Kum & Go during the robbery. M.S. testified that, in total, the suspects took around $150 and approximately eight cartons of cigarettes during the robbery. (Tr. 26.) During M.S.'s testimony, the government offered Exhibit 1, a video recording of the robbery in progress. In foundational questioning regarding Exhibit 1, the following questions were posed to M.S., who gave the following answers:

> Q. I've placed in front of you what's been marked as Government Exhibit 1. Have you seen that before?

A. Yes, I have.

Q. And what is it?

A. It is a video recording of the robbery in progress.

Q. It's actually a CD.

A. Yes, it is.

Q. Okay. And it has -- what does it have on the CD?

A. It has the full robbery taking place.

Q. Multiple different angles?

A. Yes.

Q. Have you seen that before today's testimony?

A. Yes, I have.

Q. When did you see it?

A. August 5th of 2015.

Q. And how do you know that you saw it on August 5th, 2015?

A. I was showed by the attorney.

Q. You came to my office.

A. Correct.

Q. And we showed it to you.

A. Yes.

Q. And you initialed it.

A. Yes, I did.

Q. Does that CD contain the video footage in a fair and accurate depiction of what happened on May 18, 2014?

A. Yes, absolutely it does.

(Tr. 28:14 – 29:14.) The exhibit was offered and received into evidence without objection. (Tr. 29.)  Exhibit 1 appeared as follows:



Counsel for the Government asked permission to publish the contents of Exhibit 1 to the jury, and stated: "Just for the record, there are only two angles that we're going to show. And if we can publish the first angle to the jury?" (Tr. 30:22-24.)  After one of the angles was shown, defense counsel requested clarification, stating "I don't think they're using the actual exhibit so I'd like to know, is it video number or clip number?" (Tr. 30:5-7.) Counsel for the parties then had the following exchange:

> MR. HOOK [co-counsel for the government]: It's clip number 9 on Exhibit 1.
>
> MR. JORGENSON [defense counsel]: Okay. Where does this start? Do you know the time signature? I mean, it's on the computer. You're not using the actual exhibit?
>
> MR. HOOK: This is the exhibit.
>
> MR. JORGENSON: Is the exhibit up there or is the exhibit in the computer?
>
> MS. LEHR [co-counsel for the government]: If I may, the disk has been downloaded -- the clip has been downloaded on the computer.
>
> As an officer of the court, we represent it is an exact duplicate of what's on the disk that [M.S.] observed.

(Tr. 30:8-18.) The Court responded by instructing counsel for the Government to identify for the record the precise start time and stop time, or the frame, by any numbers that were on the exhibit to make the record clear. (Tr. 30.) The Court further stated that counsel for the Defendant would have the opportunity to use any and all parts of Exhibit 1 on cross. (Tr. 30-31.)

On cross, defense counsel asked M.S. further about the clips he reviewed with the Government:

> Q. Okay. There are 16 video clips that you reviewed with the U.S. Attorney on August 5th?
>
> A. Correct.
>
> Q. Okay. And at some point on August 5th did you review all of them?
>
> A. Yes.
>
> Q. Okay. And there are exterior clips of video that you observed, if that's the case, on August 5th.
>
> A. Exterior?

> Q. Meaning outside the store.
>
> A. I don't remember seeing anything outside of the store.

(Tr. 39:15-25.)

Later at trial, co-defendant Yusuf Xasan testified. Xasan testified that he, Hassan, Fuad Buraale, and Abdi Hashi robbed the Kum & Go. (Tr. 56-57.) On the date of the robbery, the four of them were downtown drinking alcohol and smoking marijuana. When they got to the neighborhood near the Kum & Go they checked the doors of parked cars to see if they were open. Xasan stole a camouflage hat from one car. After they left, Hassan decided that they should rob the gas station. According to Xasan, the robbery was Hassan's idea. (Tr. 61) Xasan purposely parked in a spot where the cameras would not record the car. The Defendant said they should go in and take cigarettes and cash. (Tr. 62) The Government showed Clip 13 on Exhibit 1. Xasan identified Hashi as walking in first, followed by Buraale, followed by Xasan. The last person to enter was Hassan. (Tr. 63-64.) A short time after coming in, Hassan walked out. (Tr. 65.) Eight seconds later he was shown on the video standing outside the door. (Tr. 67.)

Xasan was shown clip 9 from Exhibit 1. At 18 seconds he identified Hassan as trying to get around the counter but Xasan did so first. (Tr. 68.) Hassan was shown walking back towards the door, down towards the restrooms and then out of the Kum & Go. (Tr. 69.) After Xasan and Buraale grabbed money and cigarettes, the parties all ran to the car, and went to Omaha's Hanscom Park. (Tr. 71.) They then left the park, went to Hassan's residence, "counted how many boxes of cigarettes we got and how much

cash we had. And then we kind of split the cigarettes and things like that, gave everybody a carton, and with the rest, we sold them." (Tr. 72:7-11.) Xasan testified that each of the individuals including Hassan received cash from the robbery. (Tr. 72.)

At the close of the government's case Hassan moved for judgment of acquittal under a Fed. R. Crim. P. 29. The motion was denied. Hassan and his sister testified during the Defendant's presentation of evidence. Hassan made another Rule 29 motion at the close of evidence and the motion was again denied.

During closing argument defense counsel told the jury they were going to have a disk that had 16 different camera angles from the Kum & Go robbery. (Tr. 187.) The Government objected, and a sidebar was held. (Tr. 187.) During the sidebar, defense counsel explained that the disk he received from the Government contained 16 different camera angles of the robbery and explained that, for purposes of judicial economy, he did not review Exhibit 1 when it was introduced because "when it's a disk, I have to trust that it's the disk that I got." (Tr. 187:1 - 188:1.) Counsel for the Government explained that during discovery the Government provided defense counsel with a disk containing 16 clips on it, but that disk was not the disk offered in evidence. (Tr. 188.) The parties disagreed as to whether the discovery disk could be played. The Court determined that (1) it would give a limiting instruction to the jury closing arguments are not evidence, and (2) counsel could address the matter through post-trial motions if necessary. (Tr. 190.) Following closing arguments, the jury deliberated and returned a guilty verdict against Hassan.

## STANDARDS OF REVIEW

## I. Judgment of Acquittal Under Rule 29

Under Rule 29, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). Rule 29(c) permits defendants to move the Court to set aside a verdict and enter judgment of acquittal after trial. "A district court must consider a motion for judgment of acquittal with 'very limited latitude' and must neither assess the witnesses' credibility nor weigh the evidence." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007) (quoting *United States v. Thompson,* 285 F.3d 731, 733 (8th Cir. 2002)). The evidence must be viewed in a light most favorable to the government, and the government is afforded the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The Court must uphold the jury's verdict "if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *Thompson*, 285 F.3d at 733. Further, the Court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Peters*, 462 F.3d at 957 (quoting *United States v. Serrano–Lopez*, 366 F.3d 628, 634 (8th Cir.2004)).

## II. New Trial Under Rule 33

Federal Rule of Criminal Procedure 33(a) states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Court has broad discretion in deciding motions for new trial, and its decision is subject to reversal only for a clear and manifest abuse of discretion. *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013). In considering a motion for new trial, the Court "need not view the

evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980); *see also Amaya*, 731 F.3d at 764. Despite the Court's broad discretion, "motions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution." *United States v. Vore*, 743 F.3d 1175, 1181 (8th Cir. 2014) (quoting *Johnson*, 474 F.3d at 1050-51). "A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *Id*. (quoting United States v. Lacey, 219 F.3d 779, 783 (8th Cir.2000) (internal marks omitted)).

## DISCUSSION

Hassan presents the following arguments in support of his post-trial Motions: (1) it was error for the Government to offer Exhibit 1 instead of a disk containing all available video clips; (2) the government committed prosecutorial misconduct in its closing argument; and (3) there was insufficient evidence to support the conviction. The Defendant asserts that the cumulative effect of the above alleged errors requires a new trial.

**I.      Exhibit 1**

The Defendant contends that he is entitled to a judgment of acquittal or a new trial because the Government's actions with respect to Exhibit 1 violated the Supreme Court's ruling in *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady,* the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request

8

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Eighth Circuit has held that *Brady* is violated if three requirements are met: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Morales v. Ault*, 476 F.3d 545, 554 (8th Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999))." Under *Brady,* "[a] defendant fails to show the prosecution suppressed evidence when the defendant was aware of and had access to the evidence." *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014) (quoting *United States v. Walrath*, 324 F.3d 966, 969 (8th Cir. 2003)).

The Government did not commit a *Brady* violation in this case. The Defendant argues that the Government violated *Brady* because Exhibit 1 did not contain all of the available camera angles. However, there is no dispute that the Government produced a disk to the defense with all 16 surveillance angles before trial. Although there was some dispute regarding the Government's media player, there is no evidence or argument that the Defendant was unable to view the discovery disk. *See Masten*, 752 F.3d at 1146 (stating that evidence is not suppressed, for *Brady* purposes, if the defense was aware of and had access to the evidence). The Supreme Court's ruling in *Brady* requires that the Government disclose exculpatory evidence, which the Government has done in this case. However, the ruling in *Brady* does not require the Government to introduce at trial all the evidence disclosed to the Defendant. Based on

the record, there is no evidence that the Government suppressed any exculpatory evidence in relation to Exhibit 1.

Further, there is no argument or evidence that the Government represented that Exhibit 1 contained 16 different camera angles, nor is there evidence that the Government represented Exhibit 1 as the same disk it produced during discovery. M.S. testified that the images and clips shown from Exhibit 1 fairly and accurately depicted the Kum & Go at the time of the robbery. When authenticating Exhibit 1, M.S. testified that he initialed and dated the disk that he viewed at the time he viewed it. The label on Exhibit 1 depicts M.S.'s initials and the date he viewed the contents of the disk. While M.S. stated on cross examination that he reviewed 16 different camera angles, he did not state that the disk he initialed contained 16 different camera angles. The label on Exhibit 1 also specified that the disk contained two video clips and a still image. The label listed the clips by clip number and indicated the time stamp range for the image and each clip. The Government showed Exhibit 1 to counsel for the Defendant prior to offering. The label to Exhibit 1 reasonably alerted defense counsel that Exhibit 1 contained only a portion of the evidence he received during discovery. Exhibit 1 was received without objection. There is no evidence that the Government misled M.S., the Court, the Defendant, or the jury with respect to the contents of Exhibit 1. Accordingly, the Government's actions with respect to Exhibit 1 do not merit a judgment of acquittal or a new trial.

## II. Prosecutorial Misconduct

"Prosecutorial misconduct can result in the reversal of a conviction if (1) the prosecutor's conduct or remarks were improper, and (2) the conduct or remarks prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *United States v. Davis*. 534 F.3d 903, 914 (8th Cir. 2008); *see also United States v. Young*, 470 U.S. 1, 16 (1985). The Government crosses the line of propriety when "the emphasis of its argument shifted from evidence to emotion." *United States v. Cruz-Padilla*, 227 F.3d 1064 (8th Cir. 2000) "A prosecutor should not urge a jury to convict for reasons other than the evidence; arguments intended to inflame juror emotions or implying that the jury's decision could help solve a social problem are inappropriate." *United States v. Alaboudi*, 786 F.3d 1136, 1144 (8th Cir. 2015) (internal citations omitted). "So long as prosecutors do not stray from the evidence and reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury." *United States v. Mullins*, 446 F.3d 750, 759 (8th Cir. 2006).

The Defendant identifies nine statements the Government made in closing argument that were allegedly improper:

"He lent his body to be one of four people to be in there threatening the one clerk."

(Tr. 183:6-7.)

"He was there to add the muscle."

(Tr. 183:17-18.)

"He was there to be the lookout."

(Tr. 183:18.)

"It was his idea."

(Tr. 183:19.)

"He wondered why we were in federal court. Well, we're in federal court because Liban Hassan committed a federal crime."

(Tr. 200:4-5.)

"He's heading toward going behind the counter."

(Tr. 201:7.)

"We've made sure there's no one down this hallway in the restroom. We've made sure no one is over here by this open door. We're going to go stand outside. And we're going to make sure nobody comes in. We're going to look out."

(Tr. 201:16-19.)


"He was in no hurry to get out of there. He didn't want out of there."

(Tr. 202:24-25.)

"He also knows if he lies and doesn't tell the truth, he isn't going to get anything. He wants this judge to believe he told the truth, and he did."

(Tr. 204:7-15.)

The Court concludes that none of these statements was improper. Each of these statements, though forceful and perhaps colorful, was drawn from reasonable inferences from the evidence. For example, Yusuf Xasan specifically testified that it was Hassan's idea to go to the Kum & Go. (Tr. 61.) Government counsel's remark about federal court was made in rebuttal argument and in response to defense counsel's comments about the case being in federal court. (Tr. 191-92.) Finally, Government counsel's comments about Hassan's credibility were not improper. *See*

*United States v. Littrell*, 439 F.3d 875, 882-83 (8th Cir. 2006) ("[P]rosecutors, as well as defense lawyers, may and must argue as to the credibility of witnesses, and in a case of this kind the issue of credibility is critical."). None of these statements strayed from the evidence before the Court. Accordingly, these statements did not result in prosecutorial misconduct.

## III. Evidence to Support Conviction

Hassan argues that the Government failed to establish the intent element of the crime of interference with commerce by means of robbery. Specifically, Hassan argues that the Government failed to show that he knowingly robbed or aided and abetted in the robbery of the Kum & Go. Hassan argues that his mere presence at the scene of the crime cannot establish that he knowingly robbed or aided and abetted in the robbery. See *U.S. v. Reda*, 765 F.2d 715, 719 (8th Cir. 1985) ("Guilt cannot be inferred from mere presence at the scene of a crime or a mere association with the members of a criminal conspiracy."). In support of his argument, Hassan attempts discredit the credibility of the Government's witnesses. However, "[i]t is axiomatic that [the Court] does not pass upon the credibility of witnesses or the weight to be given their testimony. Credibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference." *United States v. Goodale*, 738 F.3d 917, 923 (8th Cir. 2013). Evidence in the record supports the jury's conclusion that Hassan had the requisite intent. There was evidence that he came up with the idea to rob the Kum & Go. He entered the Kum & Go with the three others, and later waited outside the door. There was evidence that he left the location with the others and that he personally

received some of the cash and cigarettes taken from the Kum & Go. He has not presented any persuasive argument as to why the jury's verdict was unsupported.

## CONCLUSION

For the reasons stated, Hassan is not entitled to a judgment of acquittal or a new trial. He has not shown that the Government suppressed exculpatory evidence. Nor has he shown that the Government's statements during closing arguments were improper or that the jury's verdict was unsupported by the evidence.

Accordingly,

IT IS ORDERED: Defendant Liban Hassan's Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29 or, alternatively, Motion for New Trial under Federal Rule of Criminal Procedure 33 (Filing No. 91), is denied.

Dated this 9th day of November, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge